**Leo Demory ROBINSON, Appellant**

**v.**

**The STATE of Texas**

**NO. PD–0421–14**

Court of Criminal Appeals of Texas.

DELIVERED: July 1, 2015

Katherine A. Drew, Assistant Public Defender, Dallas, TX, attorneys for appellant.

Shelly O'Brien Yeatts, Assistant District Attorney, Dallas, TX, Lisa C. McMinn, State's Attorney, Austin, attorneys for the state.

## OPINION

Keasler, J., delivered the opinion of the Court, in which Keller, P.J., and Hervey, Yeary, and Newell, JJ., joined.

The court of appeals affirmed Robinson's conviction for failing to report under the sex-offender registration requirements. We must decide what degree of mental culpability the statute requires and wheth-er to consider a trial judge's findings of fact and conclusions of law in a sufficiency of the evidence review. We hold that a conviction under Article 62.012 requires knowledge or recklessness only to the duty-to-register element of the offense, and that an appellate court should disregard the trial judge's findings of fact and conclusions of law in reviewing for sufficiency of the evidence. We therefore affirm the court of appeals' opinion.

## I. Background

Robinson was indicted for the offense of failure to comply with sex-offender registration requirements. The indictment alleged that Robinson intentionally, knowingly, or recklessly failed to report his intent to move and his new address where he intended to reside.[1] Robinson waived his right to a jury, elected a bench trial, and pleaded not guilty to the trial judge.

As a result of his previous conviction for burglary of a habitation with intent to commit sexual assault,[2] Robinson was required to register as a sex offender under Texas Code of Criminal Procedure Chapter 62.[3] After his release from confinement for his burglary conviction in early 2010, Robinson began registering annually with the Glenn Heights Police Department, listing his address as his aunt's residence in Glenn Heights, Texas. In February 2010, when responding to a disturbance call at Robinson's aunt's house, Detective Benson conducted a compliance check to ensure Robinson was still living there. While conducting the compliance check, Benson spoke with two people who told him that Robinson had moved out. Benson checked the room where Robinson was staying and found the bed with-

---

1. TEX. CODE CRIM. PROC. arts. 62.102(a), 62.055(a) (West 2012).

2. TEX. PENAL CODE § 30.02(a) (West 2012).

3. TEX. CODE CRIM. PROC. arts. 62.001(5), 62.051(a).

out sheets and the drawers and closet empty.

Arnetha Barnes, Robinson's aunt, testified at his bench trial that, although she did not know the exact day Robinson moved out, he lived there until May 2010. She disputed Benson's description of Robinson's room, claiming she always kept sheets on his bed and some of Robinson's clothes were in the closet even after he moved out.

Tommy Phillips, Robinson's parole officer, testified that Robinson moved to Dallas before May 2010. According to Phillips, in April 2010, Robinson sent a fax to the Glenn Heights Police Department notifying them that Robinson had moved from his aunt's house to Dallas in March 2010. Phillips, however, later testified that the fax contained erroneous information regarding Robinson's change of address and was instead intended to notify the police department of Robinson's intent to move, rather than providing notice of a past move. On May 1, 2010, Barnes told Phillips that Robinson had moved out. Phillips testified that he did not know the exact date Robinson moved from Glenn Heights to Dallas. Phillips further testified that Robinson told him that he was having problems notifying Glenn Heights Police Department of his intent to move because when he attempted to report in person, he was told no one was available to help him and he needed to come back at another time. Phillips conducted his own compliance check on May 1, 2010 at Robinson's Glenn Heights address and was told that Robinson had already moved to "his new place."

Glenn Heights Detective Howard was the officer who handled Robinson's sex-offender registration. Howard testified that Robinson was required to register as a sex offender annually for life. Although

he acknowledged receiving the fax from Robinson's parole officer, Howard noted the fax did not qualify as proper notice under the law—it was not done in person nor was it provided within seven days of moving.

Robinson testified in his defense. He could not provide the exact date of his move. But he did testify that he knew he was required to provide in-person notification of his intent to change his address at least seven days before he moved, and although he attempted to comply with the pre-move notice, the Glenn Heights Police Department refused to accept his notice. He maintained that he repeatedly attempted to provide notice, but each time he was turned away. Robinson testified, "I would see Mr. Howard. He was, like, 'Come back tomorrow. I don't have time.'" Howard refuted Robinson's testimony, claiming that he was not aware of Robinson's attempt to provide notification of his intent to change his address.

The judge found Robinson guilty and sentenced him to two years' confinement, suspended and probated for five years. The judge made several findings of fact, indicating that he believed portions of Robinson's testimony and other evidence of Robinson's "substantial compliance" with the requirements. The judge also commented on the nature of the law: "[I]t is to a certain extent strict liability if you know [you're] supposed [to] register, which you did, and you do not strictly follow the requirements of article 62.055, then you are guilty according to my reading of the law."

On appeal, Robinson alleged that, because there was evidence that he attempted to give the required notice, the evidence is legally insufficient to show that his failure to give the required notice was inten-

tional, knowing, or reckless.[4] Relying on several sister court of appeals' decisions, the Dallas Court of Appeals held that to the extent a culpable mental state (or mens rea) is required for an Article 62.102(a) offense, the culpable mental state applies only to the defendant's actual knowledge of the statutory obligations.[5] The court of appeals alternatively held that, even if the mens rea requirement applied to the act of notification itself, as opposed to the knowledge of the obligation, the State presented sufficient evidence to support the conviction.[6] We granted Robinson's petition for discretionary review to review the court of appeals' interpretation of Article 62.102(a) and its legal sufficiency analysis.

## II. Culpable mental state required for Article 62.102(a)

Article 62.102(a) states that a person commits the offense of failure to comply with sex-offender registration requirements "if the person is required to register and fails to comply with any requirement of this chapter."[7] "If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element."[8] Because Article 62.102(a) does not contain a culpable mental state and does not clearly dispense with one, § 6.02(c) requires that Article 62.102(a) be

read to require intent, knowledge, or recklessness to establish criminal responsibility.[9] The question then becomes what mental states apply and to what element must they attach—the duty to register or the failure to comply with one of Texas Code of Criminal Procedure Chapter 62's requirements. The answer turns on the gravamen of the failure-to-comply offense.

We distinguish offenses into three different categories of offenses based on the offense-defining statute's gravamen, or focus: "result of conduct," "nature of conduct," or "circumstances of conduct" offenses.[10] Result-of-conduct offenses concern the product of certain conduct.[11] Nature-of-conduct offenses are defined by the act or conduct that is punished, regardless of any result that might occur.[12] Lastly, circumstances-of-conduct offenses prohibit otherwise innocent behavior that becomes criminal only under specific circumstances.[13]

Article 62.102(a) is a generalized "umbrella" statute that criminalizes the failure to comply with any of the registration requirements set out in Chapter 62.[14] Failing to comply with Chapter 62 is not criminal by its very nature, but rather is made unlawful by the circumstances—the duty to comply by virtue of a reportable conviction. Therefore, the failure-to-register offense is a circumstances-of-conduct

4. *Robinson v. State*, No. 05–12–01502, 2014 WL 428029, *2 (Tex.App.–Dallas Feb. 3, 2014) (not designated for publication).

5. *Id.*

6. *Id.* at *3.

7. Tex. Code Crim. Proc. art. 62.102(a).

8. Tex. Penal Code § 6.02(b).

9. *Id.* § 6.02(c) ("If the definition of an offense does not prescribe a culpable mental state,

but one is nevertheless required under Subsection (b), intent, knowledge, or recklessness suffices to establish criminal responsibility.").

10. *Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011).

11. *Id.*

12. *Id.*

13. *Id.*

14. *Id.* at 425.

offense, and the gravamen of the offense is the duty to register.[15] Although all circumstances-of-conduct offenses naturally contain an additional conduct element, the conduct itself is not necessarily an additional gravamen.

■ Although *McQueen v. State*[16] is factually distinguishable, its holding is nonetheless authoritative in resolving the present case. The *McQueen* Court addressed the unauthorized-use-of-a-vehicle statute that states "[a] person commits an offense if he intentionally or knowingly operates another's boat, airplane, or motor-propelled vehicle without the effective consent of the owner."[17] That case presented the common issue of deciphering a statute's language to answer the question of how far down the sentence the stated culpable mental state runs. The Court held that "what separates lawful operation of another's motor vehicle from unauthorized use is the actor's knowledge of a 'crucial circumstance surrounding the conduct'—that such operation is done without the effective consent of the owner."[18] As a result, this Court held that

some form of culpability must apply to those "conduct elements" which make the overall conduct criminal. Therefore, we hold that Sec. 31.07 encompasses two "conduct elements", viz: that the defendant intentionally or knowingly operated a vehicle (nature of conduct) knowing that such operation was without the effective consent of the owner (circumstances surrounding conduct).[19]

So *McQueen* established that when the circumstances of the conduct render specific conduct unlawful, a culpable mental state must attach to the circumstances of the conduct.

■ Because Article 62.012 fails to provide a culpable mental state and does not clearly dispense with one, Penal Code § 6.02(c) requires we read one into the statute. Like the Court in *Young v. State*[20] recognized, the failure-to-stop-and-render-aid statute provides a strong analogy to the statute at issue here. In *Huffman v. State*, we considered the offense of failure to stop and render aid found in Transportation Code § 550.021, which also does not contain lacks an explicit culpable mental state.[21] Section 550.021 provides in relevant part:

(a) The operator of a vehicle involved in an accident resulting in injury to or death of a person shall:

(1) immediately stop the vehicle at the scene of the accident or as close to the scene as possible;

(2) immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident; and

(3) remain at the scene of the accident until the operator complies with the requirements of Section 550.023.

(b) An operator of a vehicle required to stop the vehicle by Subsection (a) shall do so without obstructing traffic more than is necessary.

(c) A person commits an offense if the person does not stop or does not comply with the requirements of this section.

---

15. *See id.* at 427.

16. *McQueen v. State,* 781 S.W.2d 600 (Tex. Crim. App. 1989).

17. *Id.* at 603. *See* TEX. PENAL CODE § 31.07.

18. *McQueen,* 781 S.W.2d at 604.

19. *Id.*

20. *Young,* 341 S.W.3d at 427.

21. *Huffman v. State,* 267 S.W.3d 902 (Tex. Crim. App. 2008).

Concluding that the focus of this statute was on an "accident," the Court stated that a culpable mental state must attach to this circumstance because it is the gravamen of the offense.[22] Because Huffman's failure to stop, return, or remain became criminal only due to his knowledge of circumstances surrounding the conduct—an accident and a victim suffering an injury—the offense was therefore a circumstances-surrounding-the-conduct offense.[23]

Like the duties attendant to an accident and resulting injury, Chapter 62's registration requirements are triggered only by a person's duty to register. Therefore, like the failure-to-stop-and-render-aid offense in *Huffman*, the failure-to-register offense requires a culpable mental state only regarding the circumstances of the conduct. And although Penal Code § 6.02(c) generally requires that the culpable mental states of intent, knowledge, or recklessness apply when reading mental culpability into the statute under § 6.02(b), the statutory definition of "intent" contains no provision for circumstances surrounding conduct, unlike the definitions of knowledge and recklessness.[24] Therefore, intent does not apply. We hold that *McQueen, Young,* and Penal Code § 6.02(c) require that the culpable mental states of knowledge and recklessness apply only to the duty-to-register element of Article 62.012's failure-to-comply offense.

## III. Legal Sufficiency Standard Remains Unchanged in Light of Judge's Findings of Fact and Conclusions of Law

In his petition's first, second, and fourth grounds, Robinson argues that the court of appeals erred by failing to consider the trial judge's findings of fact and conclusions of law when conducting its review of the sufficiency of the evidence in a bench trial. We disagree.

First, the appellate standard for reviewing the sufficiency of the evidence is based on a hypothetical rational fact finder, rather than on the actual fact finder's particular thought process. In jury trials and in bench trials, we view the evidence in the light most favorable to the verdict in order to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt.[25] A conviction that is not rationally based on the evidence violates the Due Process Clause, whether a judge or jury sits as the fact finder in the case.[26]

Second, no statute authorizes findings of fact and conclusions of law after a bench trial in a criminal case. The Code of Criminal Procedure provides that the "verdict [of the jury] in every criminal case must be general."[27] Likewise, the "judgment of the court in a criminal case, like the verdict of the jury, must be a general one, although there is no specific statutory provision" with respect to court trials.[28] Furthermore, neither the Code of

**22.** *Id.* at 908 (citing *McQueen,* 781 S.W.2d at 603).

**23.** *Id.*

**24.** *See* TEX PENAL CODE § 6.02(c) (only intent, knowledge, or recklessness apply when required by 6.02(b); *id.* § 6.03(b)-(c) (providing that knowledge and reckless apply with respect to circumstances surrounding a person's conduct).

**25.** *See Jackson v. Virginia,* 443 U.S. 307, 309, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Brooks v. State,* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).

**26.** *Jackson,* 443 U.S. at 317, 99 S.Ct. 2781.

**27.** TEX. CODE CRIM. PROC. art. 37.07, § 1(a).

**28.** *Mattias v. State,* 731 S.W.2d 936, 939 (Tex. Crim. App. 1987).

Criminal Procedure nor any other law permits findings of fact after a court trial in a criminal case.[29]

■ In contrast, trial judges in Texas can make findings of fact and conclusions of law in civil bench trials given the use of special issues in a civil jury trial, and these findings have the same force and dignity as a jury's verdict upon questions.[30] But because criminal jury verdicts are general rather than based on special issues, it follows that criminal trial court judgments should similarly be general, rather than accompanied by findings of fact and conclusions of law.

■ Third, the common law for criminal cases did not permit findings of fact and conclusions of law after a bench trial, so there is no historical basis for permitting them in the absence of statutory authority. Texas common law disallowed findings and conclusions after a bench trial for criminal cases.[31] Although this Court has appeared to approve of the consideration of findings of fact and conclusions of law when they are consistent with a trial court's judgment,[32] such findings are inconsistent with the standard of a hypothetical rational fact finder that we use to determine the sufficiency of the evidence, and are not permitted. We conclude that an appellate court should disregard a trial court's findings of fact and conclusions of law in their entirety, even when they support the trial court's judgment. To the extent *Mattias* and subsequent cases sug-

gest otherwise, we disavow them. We hold that sufficiency-of-the-evidence reviews in bench trials should be conducted under the well-established *Jackson* standard without consideration of a trial court's unauthorized findings of fact and conclusions of law.[33]

## IV. The Evidence is Legally Sufficient

■ The court of appeals properly applied a traditional review of the sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt.[34] The court's initial analysis, which required a culpable mental state as to Robinson's duty to register but not his failure to register, correctly applied the elements of the offense. To sustain Robinson's failure-to-comply conviction, the statute requires that Robinson (1) knew or was reckless about whether he had a duty to register as a sex offender, and (2) failed to report in person to the local law-enforcement authority his intent to change his address, not later than the seventh day before the intended change.[35]

Robinson himself testified that he was aware of his duty to register, so we find the evidence sufficient as to this first element. As to the second element, there is ample evidence from which a rational fact finder could conclude that Robinson failed

29. *Id.*

30. *See id.* at 939; *Caldwell v. Barnes*, 154 S.W.3d 93, 98 (Tex. 2004).

31. *Mattias*, 731 S.W.2d at 939.

32. *See, e.g., id.* at 940; *Poindexter v. State*, 153 S.W.3d 402, 412 (Tex. Crim. App. 2005) ("When the trial judge found appellant guilty, he expressed his view that the evidence, including the hearsay evidence, was probative

and sufficient to support his finding. We cannot reweigh or recharacterize that evidence.").

33. *See Jackson*, 443 U.S. at 309, 319, 99 S.Ct. 2781.

34. *See id.*

35. *See* TEX. CODE CRIM. PROC. art. 62.102(a), 62.055(a).

to provide the proper pre-move notification. Detective Benson's February 27 visit to Robinson's aunt's residence revealed that Robinson no longer lived there, establishing that Robinson had moved from his aunt's residence as early as February 2010. According to parole officer Phillips's testimony, Robinson told Phillips that he intended to move from his aunt's residence in March, and Phillips sent a fax to the Glenn Heights Police Department in April to notify them of Robinson's intent to move. This evidence convincingly established that on or about May 7, 2010, Robinson failed to report in person an intended change of address to the Glenn Heights Police Department not later than the seventh day before he changed his address. We therefore overrule Robinson's first, second, and fourth grounds for review.

## V. Conclusion

We affirm the court of appeals' judgment.

Keller, P.J., filed a concurring opinion, in which Hervey, Yeary, and Newell, JJ., joined.

Alcala, J., filed a concurring opinion, in which Meyers, Johnson, and Richardson, JJ., joined.

Keller, P.J., filed a concurring opinion in which Hervey, Yeary and Newell, JJ., joined.

I join the Court's opinion, but I write separately to comment on appellant's claim that the authorities rebuffed his attempts to register and to respond to Judge Alcala's concerns relating to that claim. If authorities rebuff a sex-offender's repeated attempts to register, the sex offender may be able to claim an exemption from or defense to criminal liability on the basis that his failure to act was involuntary. The Penal Code provides that an omission that gives rise to criminal liability must be voluntary.[1] Due process may also require that the authorities not place significant hurdles to complying with a duty to register beyond those contemplated by the statute.[2]

Judge Alcala believes that applying a culpable mental state to a sex-offender's omissions would somehow eliminate the possibility of individuals being punished for omissions that are truly involuntary, but it would not. "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the

---

1. TEX PENAL CODE § 6.01(a) ("A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession."). *See also Ramirez–Memije v. State*, 444 S.W.3d 624, 627–28 (Tex. Crim. App. 2014). I need not address what would make an omission involuntary, but I note that, in the "act" and "possession" contexts, voluntariness is a very minimal requirement. *See Farmer v. State*, 411 S.W.3d 901 (Tex. Crim. App. 2013) (voluntary act of swallowing pill though mistaken about what pill was being swallowed); *Ramirez–Memije*, 444 S.W.3d at 627–28 (voluntary possession of skimming device without knowing its contents).

2. *See Harrah I.S.D. v. Martin*, 440 U.S. 194, 198, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979) (school district did not act arbitrarily when it gave teachers affected by change in rule the opportunity to bring themselves into compliance); *Balough v. Fairbanks N. Star Borough*, 995 P.2d 245, 263 (Alaska 2000) (junkyard operator "did not receive all the process to which she was due" when she was given no opportunity to remedy deficiencies in noncompliance after rezoning and after the overturning of zoning administrator's ruling in her favor). Due process may also be violated if a statute makes it nearly impossible to comply with its provisions, but such is not the case with the Texas sex-offender registration scheme.

circumstances exist." [3]  Even if a failure to comply with the registration statute is involuntary, the sex-offender who is rebuffed by public officials still knows that he is in fact failing to comply.  The solution is not to impose a culpable mental state where it does not belong, but to recognize, in an appropriate case, that the voluntary-omission requirement and due process are the mechanisms to address any stonewalling by public officials that prevents a sex-offender from complying with registration requirements.

Alcala, J., filed a concurring opinion in which Meyers, Johnson, and Richardson, JJ., joined.

I concur in this Court's judgment affirming the judgment of the court of appeals that upholds the conviction of Leo Demory Robinson, appellant, but I do not join the majority opinion.  *See Robinson v. State,* No. 05–12–01502–CR, 2014 WL 428029, at *1 (Tex.App.–Dallas Feb. 3, 2014).  In agreement with almost all of this Court's analysis, I would identically hold that the evidence is legally sufficient to affirm this conviction, that findings of fact and conclusions of law are inapplicable to sufficiency-of-the-evidence reviews, and that the State must prove that a defendant acted knowingly or recklessly as to the duty-to-register element of the offense.  Where I part ways with this Court's majority opinion is with respect to its decision not to apply a culpable mental state to the latter portion of the statute that addresses a defendant's failure to give timely notification of a change in his address.  *See* Tex. Code Crim. Proc. art. 62.102(a), 62.055(a).  The majority opinion's holding will result in this offense essentially becoming a strict-liability offense for which the penalties are severe, even in the absence of any indication from the Legislature that it intended to impose strict liability in this context.  *See id.*[1]

As this Court's majority opinion accurately observes, in determining those elements to which a culpable mental state must apply, an appellate court begins its analysis by examining the statutory language in order to determine whether it expressly prescribes or dispenses with a culpable mental state.  *See Aguirre v. State,* 22 S.W.3d 463, 471–72 (Tex. Crim. App. 1999).  An examination of the statutory language for the sex-offender-registration statute reveals that no culpable mental state is expressly prescribed.  Article 62.102 of the Code of Criminal Procedure states, "A person commits an offense if the person is required to register [as a sex offender] and fails to comply with any requirement of [the Chapter 62 sex-offender-registration program]."  *See* Tex. Code Crim. Proc. art. 62.102(a).  With respect to the pre-move notification portion of Chapter 62, Article 62.055 of the Code states, "If a person required to register under this chapter intends to change address, regardless of whether the person intends

---

3.  Tex Penal Code § 6.03(b).

1.  The practical consequences of this Court's decision will be that a sex offender who timely appears at a police station in a diligent effort to comply with the law—even if he sits in the police station day in and day out for twenty-four hours each day patiently waiting and begging to be registered—will be found guilty of the offense of failure to register as a sex offender if an officer refuses to register him for any reason whatsoever, whether it be valid or irrational.  This is now essentially a strict-liability crime that gives defendants absolutely no defense to a charge of failure to give timely notification.  As I explain more fully below, this Court's harsh interpretation will result in the imposition of criminal penalties upon individuals who lack any criminal intent as to their conduct but are penalized as a result of their status as sex offenders.  This cannot be what the Legislature intended when it drafted this statute.

to move to another state, the person shall, not later than the seventh day before the intended change, report in person to the local law enforcement authority. . . ." *Id.* art. 62.055(a). The failure-to-register statute, therefore, as applied in the particular context of a failure to comply with the pre-move notification requirements, contains two parts: (1) the requirement that a particular individual be subject to registration as a sex offender, and (2) the individual's failure to comply with the specific registration requirements by failing to report in person to the registering authority not later than the seventh day before an intended change of address. *See id.* art. 62.102(a), 62.055(a).

Next, this Court's majority opinion determines that, although no mental-state requirement is expressly included in the statutory language, it is necessary to include one under the requirements of the Texas Penal Code. *See* TEX. PENAL CODE § 6.02(b), (c); *Aguirre*, 22 S.W.3d at 470. Again, I agree. Section 6.02 of the Texas Penal Code states, "If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element." *See* TEX. PENAL CODE § 6.02(b). Because the sex-offender-registration statute does not plainly dispense with any mental element, the offense requires proof of a culpable mental state of either intent, knowledge, or recklessness. *See id.* § 6.02(c); *see also id.* § 6.03 (defining culpable mental states).

Next, the majority opinion determines, and I agree, that in determining the portion or portions of a statute to which a culpable mental state attaches, a court should examine the "conduct elements" of the offense to determine whether they are nature-of-conduct, result-of-conduct, or circumstances-surrounding-conduct elements.

*See McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989) (citing *Lugo–Lugo v. State*, 650 S.W.2d 72, 74 (Tex. Crim. App. 1983)). "An offense may contain any one or more of these 'conduct elements' which alone or in combination form the overall behavior which the Legislature has intended to criminalize, and it is those essential 'conduct elements' to which a culpable mental state must apply." *Id.* In related contexts, this Court has similarly focused on the gravamen or "gist" of the offense to determine, for example, those elements for which a unanimous jury verdict is required. *See, e.g., Young v. State*, 341 S.W.3d 417, 424 (Tex. Crim. App. 2011) (in jury-unanimity context, observing that "[o]ne looks to the gravamen or focus of the offense" to determine whether the gravamen is the result of the act, the nature of the act itself, or the circumstances surrounding that act). An offense may have multiple "gravamina." *See Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015).

Although it recognizes that *McQueen* is "authoritative in resolving the present case," as do I, this Court's majority opinion does not fully explain the significance of *McQueen*, which does not limit a culpable mental state requirement to a single element but instead permits more than one culpable mental state in certain situations. This is the point where I part ways with the majority opinion. In *McQueen*, this Court observed that, "where otherwise innocent behavior becomes criminal because of the circumstances under which it is done, a culpable mental state is required as to those surrounding circumstances." *McQueen*, 781 S.W.2d at 603. In that case, the Court considered whether the statute criminalizing unauthorized use of a vehicle required proof of a culpable mental state only as to the defendant's conduct in operating the vehicle, or whether it rather additionally required proof of a

culpable mental state as to the lack of the owner's effective consent. *Id.* at 601–02. Although *McQueen* is factually distinguishable from the present case because it involved a statute with an expressly prescribed mental state, and, therefore, the question in that case was "how far down the sentence" the Legislature intended for the mens rea to travel,[2] as opposed to what culpable mental state should apply in the absence of any express indication, this Court's approach in that related context was instructive. *See id.* In reaching its holding that a culpable mental state was required both as to the defendant's conduct in operating the motor vehicle and as to the lack of consent, the Court in *McQueen* reasoned that

> [w]hat makes the conduct unlawful is that it is done under certain circumstances, i.e., without the owner's permission. Therefore, the unauthorized use of a motor vehicle is a 'circumstances' type offense, and the culpable mental state of 'knowingly' must apply to those surrounding circumstances.

*Id.* at 603. *McQueen* thus stands for the propositions that (1) a culpable mental state is generally required *at least* as to any circumstances-surrounding-the-conduct element that renders otherwise lawful behavior unlawful, and (2) although an offense may be characterized as a "circumstances" type offense, proof of a culpable mental state may nevertheless be required as to more than one "conduct element" if those conduct elements combine to form the overall criminal behavior.[3]

This Court's majority opinion seeks to limit a culpable mental state only to the first portion of the failure-to-register statute, the existence of a particular individual's duty to register as a sex offender, which everyone agrees is a circumstances-surrounding-conduct element. Under *McQueen*, this element requires proof of a culpable mental state because it is, in part, the existence of that circumstance that renders otherwise lawful conduct—moving to a new address without providing proper notification—unlawful. *See McQueen*, 781 S.W.2d at 603. Although I agree that a culpable mental state applies to the duty to register, unlike this Court's majority opinion, I would additionally apply a culpable mental state to the second portion of the statute, the failure-to-notify element of the offense, in light of this Court's previous statements in *Young v. State* indicating that the gravamen or focus of the failure-to-register offense is the "forbidden act" of failing to comply with registration requirements. *See Young*, 341 S.W.3d at 426. I would hold that the statute's focus encompasses both the nature of the conduct in failing to register as well as the surrounding circumstances of being required to register, thereby triggering culpable-mental-state requirements as to both conduct ele-

2. *See DeLay v. State*, 443 S.W.3d 909, 924 (Tex. Crim. App. 2014) (citing *Liparota v. United States*, 471 U.S. 419, 424 n.7, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985)).

3. *See McQueen v. State*, 781 S.W.2d 600, 604 (Tex. Crim. App. 1989) (stating that "some form of culpability must apply to those 'conduct elements' which make the overall conduct criminal," and stating that unauthorized-use statute, a circumstances-type offense, encompassed "two 'conduct elements,' viz: that the defendant intentionally or knowingly operated a vehicle (nature of conduct) knowing that such operation was without the effective consent of the owner (circumstances surrounding conduct)"); *see also DeLay*, 443 S.W.3d at 923 (Tex. Crim. App. 2014) (analyzing money laundering statute and holding that culpable mental state was required both as to the nature-of-conduct element and as to the circumstance-surrounding-conduct element because "[o]therwise, the statute would attach a mens rea to nothing more than conduct ... that is not intrinsically blameworthy") (citing *McQueen*, 781 S.W.2d at 600, 603, 604).

ments. *See id.*; *see also McQueen*, 781 S.W.2d at 603.

As the following discussion of *Young v. State* shows, the duty to register, alone, cannot be what the Legislature was concerned with when it enacted this statute because one's knowledge of his duty to register is not what makes the conduct criminal. Instead, it is the failure to register when registration is required that the statute is intended to punish. The suggestion that the gravamen or focus of the offense is simply the duty to register clearly misunderstands the Legislature's intent in drafting a statute that punishes sex offenders for failure to verify their addresses with police departments. Citing to *Young*, this Court's majority opinion determines, and I agree, that a gravamen of the offense is the duty to register and that the offense is a circumstances-surrounding-conduct offense, which is one that "prohibit[s] otherwise innocent behavior that becomes criminal only under specific circumstances." *See Young*, 341 S.W.3d at 423, 427 ("Because Article 62.055 punishes what would otherwise be innocent behavior—moving to a new address [without giving proper notification]—under the circumstances that the person is a registered sex offender, we conclude that the statute creates a 'circumstances surrounding the conduct' offense."). I agree with this characterization of this portion of *Young*, but I believe that this is too narrow a view of what *Young* actually determined is the gravamen of this offense. In *Young*, the defendant, a registered sex offender, moved to a new residence but failed to notify authorities of his move as required by statute. *Id.* at 419; *see also* TEX. CODE CRIM. PROC. art. 62.055(a). He was charged by a two-paragraph indictment alleging that he (1) failed to notify law enforcement seven days prior to his move, or (2) failed to provide proper notice within seven days after his move. *Young*,

341 S.W.3d at 419. The jury instructions at Young's trial permitted the jury to convict him if it unanimously found that he had failed to report his change of address, but it did not require unanimity as to whether he did so either before or after his move. *Id.* On discretionary review, Young complained that the jury should have been required to unanimously agree upon whether he failed to register either before or after his move, but this Court rejected his complaint. *Id.* at 420. This Court stated,

> To address appellant's argument, *we look to the gravamen or focus of the offense* created by Article 62.055(a). *The forbidden act is failing to inform law enforcement about an impending or completed change of residence.* The primary purpose of creating and maintaining a sex-offender registry is to give local law enforcement officers a means of monitoring sex offenders who are living within their jurisdiction in order to better thwart repeat offenses. Knowing where a sex offender lives is arguably the simplest and best way to monitor him. By failing to report where he is residing, the sex offender is subverting the objective of the registry. The community and law enforcement want to know where the sex offender lives so they may take proper precautions.

*Id.* at 426 (emphasis added).

Rather than limiting the gravamen of the offense merely to the duty to register, this passage from *Young* signals the Court's understanding that the gravamen of the failure-to-register offense extends to a defendant's "forbidden act" of failing to comply with the registration requirements, which is a nature-of-conduct element of the offense. *See id.* Concluding that "[t]he focus of the [failure-to-register] statute is on giving notification to law enforcement and not the means by which a sex offender

failed to do so," this Court described the gravamen of the offense as also encompassing a nature-of-conduct element. *Id.* at 427. It concluded that jury unanimity was required as to Young's failure to register, but not as to whether that failure had occurred before or after his move. *See id.* at 427–28.

Reading them in conjunction, this Court's statements in *Young* suggest that it is the combined force of the circumstance of being required to register and the failure to comply with one's registration obligations that form the overall behavior that the Legislature has sought to punish. *See id.* at 426–28; *see also McQueen,* 781 S.W.2d at 604. The Court in *Young* placed great emphasis on the statute's primary purpose of monitoring sex offenders as a means of thwarting repeat offenses, and it observed that, by failing to comply with the pre-move notification requirements, an offender "is subverting the objective" of the registry. *Young,* 341 S.W.3d at 426. This language shows that the nature-of-conduct element in failing to register is equally important as the circumstance of being required to register because it is only the combination of those elements that subverts the Legislature's objective in monitoring sex offenders and preventing sex crimes. *See id.*

In support of this conclusion, I note further that, unlike pure "circumstances" type offenses, the mere existence of the circumstance in this case—being required to register—does not, taken on its own, turn the otherwise innocent conduct of changing one's address into a criminal offense. After all, a sex offender who moves does not commit an offense unless he also fails to do something that the law requires of him, namely, providing the required notification to the authorities. Rather, as this Court suggested in *Young,* it is only the combination of the duty to register

plus the failure to comply that turns the act of moving into a criminal offense. *See id.* In this sense, the failure-to-register offense is distinguishable from the purely circumstances-type offenses that were at issue in *DeLay v. State* and *McQueen* because, in those situations, the inherently innocuous conduct was rendered criminal solely by virtue of the existence of some circumstance. *See DeLay v. State,* 443 S.W.3d 909, 924 (Tex. Crim. App. 2014) (otherwise lawful conduct of engaging in financial transactions would be rendered unlawful solely by circumstance that transactions involved proceeds of criminal activity); *McQueen,* 781 S.W.2d at 603–04 (conduct at issue—driving a car—would turn into criminal conduct solely by virtue of lack of owner's consent).

*McQueen* indicates that, for a "circumstances" type offense, a culpable mental state is *at least* required as to the circumstance that renders otherwise innocent conduct unlawful; *McQueen* does not, however, suggest that a culpable mental state is required *only* as to that circumstance. *See McQueen,* 781 S.W.2d at 603. I conclude that, in accordance with *McQueen,* offenses may have multiple "essential conduct elements" that trigger culpable-mental-state requirements if those conduct elements make up the overall behavior that the Legislature sought to punish. *See id.* at 603.

I am unpersuaded that the offense of failure to stop and render aid is instructive because there the knowledge of the accident and a victim were the gravamen that created the circumstances-surrounding-the-conduct offense. *See* Tex. Transp. Code § 550.021; *Huffman v. State,* 267 S.W.3d 902, 908 (Tex. Crim. App. 2008). At a minimum, knowledge of an accident alone creates a burden on the drivers to stop to exchange insurance information. In contrast, knowing about a duty to regis-

ter as a sex offender, alone, shows only that a defendant knew he was supposed to register, but that does not create any offense. It is only the additional failure to register as required that creates the criminal penalty.

Having determined that the failure-to-register offense is properly understood as having two equally important gravamina—the existence of the duty to register, which is the circumstances-surrounding-the-conduct portion of the offense, and the failure to do so, which is the nature-of-conduct portion of the offense—I conclude that a culpable mental state must apply to both of those elements. *See McQueen*, 781 S.W.2d at 604. Specifically, a mens rea of knowing or reckless must attach to a defendant's duty to comply with sex-offender-registration requirements, and a mens rea of intentional or knowing must attach to his failure to provide notification of a change of address. *See* TEX. PENAL CODE §§ 6.02(c) (if statute does not prescribe culpable mental state but one is nevertheless required under Penal Code Section 6.02(b), intent, knowledge, or recklessness suffices to establish criminal responsibility); 6.03(b), (c) (providing that a person may act "knowingly" or "recklessly" with respect to the "circumstances surrounding his conduct"); 6.03(a), (b) (explaining that person may act "intentionally" or "knowingly" with respect to the "nature of his conduct").[4] Like the First Court of Appeals, therefore, I agree that the test should be whether a "rational jury could have found beyond a reasonable doubt that [a defendant] had notice of the new registration location and that he intentionally

and knowingly failed to verify his registration information[.]" *Harris v. State*, 364 S.W.3d 328, 335–36 (Tex.App.–Houston [1st Dist.] 2012, no pet.) (holding that evidence was legally sufficient under that standard).

As to the merits of appellant's sufficiency-of-the-evidence challenge, I would uphold appellant's conviction, even under my interpretation of the statute that includes a culpable mental state as to the failure-to-register element of the offense. As the court of appeals discussed, there is ample evidence from which a hypothetical rational fact finder could conclude that appellant's failure to provide the proper pre-move notification was intentional or knowing. A rational fact finder could have reasonably disregarded appellant's contentions that the police department refused to accept his notification of a change of address in light of the conflicting evidence from Detective Benson, who denied appellant's claims. Viewing the evidence in a light most favorable to the trial court's judgment, appellant had moved from his aunt's residence as early as February 2010 based on the evidence that Detective Benson's February 27 visit to appellant's aunt's residence revealed that appellant no longer lived there. According to parole officer Phillips's testimony, appellant told Phillips that he intended to move from his aunt's residence on March 19, and Phillips sent a fax to the Glenn Heights Police Department on April 23 to notify them of appellant's intent to move. This evidence is sufficient to show that on or about May 7, 2010, appellant intentionally or knowingly failed to report in person an intended

---

4. Though not pertinent to the issue here, I note for purposes of clarity that I also conclude that, because the means by which a sex offender failed to provide notice about his change of address is not the gravamen of the offense, the State need not prove a culpable mental state as to the particular means by

which the failure occurred, namely, the lack of in-person notification seven days prior to a defendant's change of address, or the lack of notice of his new address seven days after changing his address. *See* TEX. CODE CRIM. PROC. art. 62.102(a), 62.055.

change of address to the Glenn Heights Police Department not later than the seventh day before he changed his address, and that he had knowledge of his obligation to provide such notice under Chapter 62.

The goal of the sex-offender-registration statute is to allow the public to know where sex offenders reside in order to better ensure society's safety while permitting the person to reenter society. Rather than effectuate this goal, this Court's majority opinion thwarts that purpose by interpreting the registration statute as criminalizing every registration failure, even if the failure was due to police malfeasance, neglect, or oversight, and even if the defendant diligently made every possible effort to comply with the law. Because the majority opinion effectively makes the failure-to-register offense a strict-liability crime that will lead to the imposition of criminal penalties upon sex offenders who lack any criminal intent as to their conduct in failing to register, I do not join the majority opinion. I, therefore, respectfully concur in this Court's judgment.